**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: _______________**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**GENESISAI CORP.**
**and**
**ARCHIL CHEISHVILI,**

**Defendants.**
________________________________________/

# COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## I. INTRODUCTION

1. From approximately December 2019 through December 2024 ("the Relevant Period"), GenesisAI Corp. ("GenesisAI" or "the Company"), and its co-founder and then-CEO, Archil Cheishvili ("Cheishvili") (collectively, "Defendants"), raised more than $5.3 million from more than 4,000 investors while negligently making material misrepresentations regarding the Company's projected revenue, current valuation, and customer demand.

2. Throughout the Relevant Period, Defendants solicited investors through the Company's website, social media, mass marketing emails, online advertising, and other means, to invest in a series of Regulation Crowdfunding and Regulation A offerings of GenesisAI stock. GenesisAI's business objective was to connect companies in need of AI with companies which

developed AI and were looking for ways to monetize it. By chaining multiple AI models together, the Company sought to improve the functionality and quality of AI products and services.

3. Defendants' negligently made material misrepresentations to prospective investors about GenesisAI's anticipated revenue growth and its claimed substantially increasing year-to-year valuations belied its functionality and the lack of actual customers contracted to utilize its promoted services.

4. In 2019 and early 2020, Defendants forecasted that Genesis AI would be generating significant revenue within a few months and that revenue would increase steadily, reaching up to $250 million in 2024. When Defendants disseminated this revenue forecast, Defendants should have known they lacked a reasonable basis to forecast such revenue as the Company had no agreements with customers to justify their revenue projections. In other words, Defendants should have known that the Company did not have a concrete existing source of revenue to justify these revenue projections. In fact, in early 2020 GenesisAI's marketplace remained in its beta stage and would not be fully launched until May 2022.

5. Defendants also disseminated increasing valuations of the Company to prospective investors that rose steadily from $7.5 million in 2019 to more than $204 million for the Company's June 2022 crowdfunding. Defendants did this despite knowing the Company did not have a robust comparison analysis of its valuation. Here too, Defendants lacked sufficient basis to support their claims about GenesisAI's valuation and acted negligently because they should have known that a more robust objective analysis was needed before any such valuation-related statements were made to potential investors.

6. Defendants also negligently misrepresented to prospective investors on the Company's website, crowdfunding webpage, investor slide decks, offering materials, and emails,

that the Company had partnerships with other companies when the Company only had signed non-binding memoranda of understanding with other companies which were not actual partnership agreements.

7. On January 2, 2025, GenesisAI announced that it was in the best interests of the Company to cease developing its products and that Cheishvili was stepping down from his role as CEO and other roles with the Company.

8. As a result of the conduct alleged in this Complaint, Defendants have violated Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(2)].

9. Unless enjoined, Defendants will continue to violate the federal securities laws. Among other relief, the Commission seeks permanent injunctions against Defendants, disgorgement of ill-gotten gains with prejudgment interest, a civil monetary penalty, and an officer and director bar against Cheishvili.

## II. DEFENDANTS

10. **GenesisAI** is a Delaware corporation incorporated in July 2018, with its principal place of business in Sunnyvale, California. During the Relevant Period, GenesisAI was headquartered in Miami, Florida.

11. **Cheishvili**, 33, is a resident of Sunnyvale, California. During the Relevant Period, Cheishvili resided in Miami, Florida. From August 2018 to January 2025, Cheishvili served as the CEO, officer, and a board member of GenesisAI.

## III. JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)].

13. This Court has personal jurisdiction over Defendants and venue is proper in the Southern District of Florida because Defendants engaged in acts and transactions in this District constituting violations of the Securities Act. During the Relevant Period, GenesisAI's principal place of business was in Miami, Florida, and Cheishvili resided in Miami, Florida.

14. In connection with the conduct alleged in the Complaint, Defendants, directly and indirectly, singly or in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, and of the mails.

## IV. FACTUAL ALLEGATIONS

### A. GenesisAI's Business Model and Securities Offerings

#### *i. GenesisAI's Operations and Evolving Business Models*

15. Cheishvili co-founded GenesisAI in 2018 to attempt to produce a functional and decentralized marketplace for AI services. Cheishvili was GenesisAI's CEO, officer, and one of its board members. Cheishvili created or approved all statements made or posted by GenesisAI.

16. On the Company's website, Defendants stated GenesisAI had "agreements with AI suppliers" who would "bring technology" while the Company would bring users. Defendants stated in offering documents and their crowdfunding webpages that GenesisAI would generate revenue by charging users a monthly subscription fee to use the tools on the marketplace and by taking a 30% fee on transactions that occurred directly between buyers and sellers on the marketplace.

17. Defendants continually published updates about developments in the Company's marketplace and technology, such as:

- In October 2021, Defendants stated on a StartEngine Primary LLC ("StartEngine") crowdfunding offering page for GenesisAI, "[w]e have a beta version of the marketplace up and running…[with] 23 models deployed…"
- In May 2022, Defendants announced the launch of GenesisAI's marketplace, which allowed AI companies to offer and showcase their services, on Netcapital Funding Portal Inc.'s ("Netcapital") crowdfunding offering page for GenesisAI, YouTube, social media, and elsewhere. The marketplace had approximately 35 AI models available.
- In a slide deck emailed to investors in May 2022, Defendants stated that the marketplace allowed developers to "discover, test, and integrate various AI related" application programming interfaces.
- In a form filed with the SEC in June 2022, GenesisAI stated that it had developed "an artificial intelligence, or AI, protocol and platform that enables different AI systems to communicate with each other, exchange data, and trade services." GenesisAI claimed its product had a competitive advantage of better quality at lower prices.

18. During the Relevant Period, GenesisAI targeted customers in various fields, including financial services, asset management, climatology, and healthcare, among others. Defendants promoted these broadening customer targets in their investor solicitations.

19. In 2023, GenesisAI developed an AI application email server tool capable of sending large and inexpensive email blasts that were not constrained by the limitations of third-party email providers. That same year, Defendants announced the launch of GenesisAI's email server tool as a product. The Company deployed the email server tool and used it to reach new potential investors.

### *ii. GenesisAI's Securities Offerings*

20. From approximately December 2019 through December 2024, Defendants continuously solicited and raised money from investors. Defendants used various means to solicit investors, including social media, online advertisements, mass marketing email campaigns, the crowdfunding intermediaries' fundraising webpages, GenesisAI's own webpage, and a sidewalk display advertisement. The Company spent a portion of the investor funds it raised to pay for ads on X (then Twitter), Google, Facebook, and other websites to promote the Company and its product offerings as well as to solicit new investors. From 2020 through 2024, GenesisAI paid X, Google, and Meta (Facebook) at least $780,000, combined, for advertising.

21. Through these efforts, Defendants raised more than $5.3 million from more than 4,000 investors in public and private offerings of simple agreements for future equity ("SAFE") and stock. Investors in GenesisAI were predominantly retail investors who were attracted to the Company's AI focus, revenue projections, rising valuation, and purported customer demand. Defendants raised most of the investor funds through Regulation Crowdfunding offerings through crowdfunding intermediaries and relying on a provision in the 2012 JOBS Act[1] allowing unaccredited investors to purchase equity in early-stage private companies.

22. The SAFEs that investors purchased from GenesisAI are securities because, under their terms, they convert to shares of GenesisAI preferred stock upon certain conditions, such as if the company receives equity financing or has a liquidity event. Thus, the SAFEs meet the definition of security under Securities Act § 2(a)(1) and Exchange Act § 3(a)(10). Additionally, the company's offering documents referred to the investment as securities. GenesisAI's offering

---

[1] Pub. L. 112-106 (April 5, 2012).

of stock was also an offering of securities because stock is a "security" under the Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act.

23. Beginning in December 2019, GenesisAI conducted four crowdfunding campaigns through crowdfunding intermediaries. The first was through Wefunder Portal LLC ("Wefunder"), which was followed by three campaigns through Netcapital. Defendants initiated an additional crowdfunding round through StartEngine in September 2021, but StartEngine cancelled this offering. In 2022, the Company also conducted an offering of stock under Regulation A through the Dalmore Group, a registered broker-dealer. This offering permitted Cheishvili to sell a small portion of his own GenesisAI stock, which had been granted to him by the Company. Between February 2022 and June 2022, Cheishvili sold 12,000 shares of GenesisAI stock and made approximately $51,000 in profit.

**B. Defendants' Material Misrepresentations to Prospective Investors and Investors**

24. Defendants negligently made material misrepresentations on the Company's website, its crowdfunding webpages, its public filings, in social media, and in email communications to certain individual prospective investors in soliciting prospective investors to invest in GenesisAI's securities offerings. These included projections that GenesisAI would generate revenue within months despite the absence of specific commitments from customers that could support such statements; misrepresentations about the Company's valuation; and misrepresentations about the Company's agreements with other companies.

***i. Defendants' Misrepresentations Regarding GenesisAI's Revenue Prospects***

25. In 2019 and 2020, in investor slide decks and via email communications, Defendants negligently made material misrepresentations to prospective investors about GenesisAI's anticipated revenue growth, forecasting that GenesisAI would be generating

significant revenue within a few months and that revenue would increase steadily. These statements, written and approved by Cheishvili, created unfounded expectations that GenesisAI would soon realize revenue and that the revenue would quickly rise to tens and then hundreds of millions of dollars annually.

26. In an email sent to a potential investor in December 2019, Cheishvili projected revenue of $1 million in 2020 and $8 million in 2021 for the Company. Although there were preliminary expressions of interest from potential clients, Cheishvili's anticipation of such revenue was not reasonable at that time because GenesisAI did not have any concrete commitments from potential clients to create potential revenue for its business model, and its marketplace was still in its beta stage.

27. Similarly, in a slide deck available to investors on GenesisAI's December 2019 Wefunder offering page, Defendants included a graph entitled "Revenue Forecast" with a revenue line that began in mid-2020 at $0, projected revenue by late 2020, and rose steadily upward to $250 million in revenue by 2024, as seen here:



28. Although the graph included a disclaimer "that this forecast is not guaranteed," Defendants were still negligent in using this graph as it created a misleading impression that the Company would generate revenue a few months from its 2019 publication. It also included that Defendants projected that revenue would increase sharply, when, in fact, Defendants had no reasonable basis to expect any such revenue.

29. In another instance, in February 2020, Cheishvili responded to a question from a prospective investor in the comments section of the Company's webpage on Wefunder, stating, "We estimate to reach revenue of around $25M in 3 years! Goal is to become market leader in all things AI . . ." Also, in an April 2020 email exchange with a prospective investor, Cheishvili stated that the Company had "lots of companies and users in the waitlist" and that they were "targeting $500k in revenue this year and $5M next year." At the time that Cheishvili made those statements, those statements were misleading, and Cheishvili should have known they were misleading.

30. Although GenesisAI indicated that its projected revenues were not guaranteed and potential users had expressed interest in GenesisAI's marketplace, Defendants should have known that the Company did not have concrete prospects for potential sources of revenue to justify their projections. When these projections were made in 2020, GenesisAI's marketplace was in its beta stage and would not be fully launched until 2022. There was no charge for subscription fees for users before the marketplace launch, the Company had no agreements or commitments from users, and, although there was interest expressed during the beta stage, there was no "waitlist." Later in 2020, the Company ceased making revenue projections.

31. The Company did not generate any revenue from 2018 to 2021. In 2022, the Company generated only approximately $8,000 in revenue and most of this revenue was generated

by hosting an AI conference in Miami, Florida. And despite having launched its marketplace in May 2022, GenesisAI's revenue increased only to approximately $9,000 in 2023. By 2024, the Company was realizing some revenue, mostly from its email server tool—not its AI marketplace. In 2024, GenesisAI realized approximately $40,000 in revenue–far short of the $250 million Defendants had projected.

### *ii. Defendants' Misrepresentations About GenesisAI's Valuation*

32. Despite the lack of meaningful revenue, Defendants continued to increase the Company's stated valuation in each of its offerings. Defendants negligently used the increasing valuation of GenesisAI in investment solicitation materials, such as the Company's webpage on Netcapital and StartEngine, and other public statements.

33. In its first crowdfunding offering in 2019, Defendants used an implied valuation of $7.5 million. Cheishvili set this valuation, which was stated in the offering documents and by Cheishvili in the comments section of the Company's solicitation page on Wefunder. When Defendants initiated a second crowdfunding offering April 2021, Defendants stated in the offering documents that the Company was now valued at approximately $47 million. Defendants increased the valuation despite the Company having no revenue and its technology remaining in a beta stage. When the Company initiated its next crowdfunding offering in September 2021, Defendants increased the stated valuation of GenesisAI to approximately $89 million.

34. On GenesisAI's Netcapital webpage for a crowdfunding offering begun in July 2022, Defendants stated that the Company had a valuation of $204 million. This valuation was more than twice the valuation Defendants had used the previous year. By increasing the valuation, Defendants negligently created a misleading impression that the Company was achieving

significant developments when in fact the Company had failed to generate any significant revenue and its only significant asset was the cash derived mostly from investor funds.

35. In support of GenesisAI's misleading statements about its valuation, Defendants cited GenesisAI's increasing number of registered users. On GenesisAI's website and elsewhere, Defendants told prospective investors that GenesisAI was "going to charge users monthly subscription fees per [AI] model." Additionally, Defendants repeatedly communicated increases in the number of registered users for the marketplace in investor solicitations. In the 2021 StartEngine crowdfunding offering, GenesisAI stated it had 1,000 registered users. In its offering circular in February 2022, GenesisAI stated that "on the demand side, we have over 1,400 individual registered users and companies." In a video solicitation for a crowdfunding offering that was available to investors on YouTube, Cheishvili stated that a reason "you should invest" was that GenesisAI had "around 2,000 users and product launched."

36. By 2023, Defendants stated on GenesisAI's investor decks that the Company had more than 2,600 registered users on its platform. However, Defendants failed to disclose that becoming a "registered user" did not necessarily mean purchasing or intending to purchase GenesisAI's services; it meant filling out a registration form and providing GenesisAI a name, affiliation, and email address as an expression of potential interest. GenesisAI did not require any financial commitment to become or remain a user. GenesisAI did not even keep track of how many users were active. Given GenesisAI's stated business model to charge users subscription fees, it was negligently misleading of Defendants to announce the number of registered users as a metric for success while failing to disclose that becoming and remaining a registered user did not require a financial commitment and that the Company did not always track if users were active.

37. When investors raised questions about the basis for such a high valuation, Cheishvili stated that the valuation was based on "comparables." While Defendants had disclosed in connection with this offering that the estimated valuation was established by the Company, Cheishvili omitted to inform investors that he alone came up with the estimated valuation, and that it was based on his comparison of companies he personally deemed comparable to GenesisAI. In fact, his comparison process had no independent support, and Cheishvili selected companies that had substantial customers, were much further ahead in developing their products and services, or had substantial financial backing from high-profile venture capitalists, all of which GenesisAI lacked.

***iii. Defendants Misled Investors Regarding GenesisAI's Customer Demand***

38. Defendants negligently made misleading statements about GenesisAI's operations on the Company's webpage, social media, and investor solicitations. These material misrepresentations included misleading claims of partnerships with other companies and misleading statements about the users of the marketplace.

39. In 2020 and 2021, Defendants featured a slide deck on GenesisAI's webpage and its crowdfunding fundraising page that stated that the Company had "[o]ver 25 partnerships!" Defendants were negligent in using the word "partnerships" because they created a misleading impression that the Company had signed partnership agreements to do business when, in fact, the Company only had signed non-binding memoranda of understanding.

40. In 2021, Defendants also announced on their crowdfunding fundraising page that the Company had "over 15 companies willing to join [its] marketplace…" And in 2022, in the Company's offering circular available to investors, Defendants stated to investors that the Company had "over 15 agreements with AI companies and individuals who are interested in

deploying AI tools" in the marketplace. Although some of the companies that entered into MOUs with GenesisAI deployed their AI tools on the GenesisAI platform, Defendants were negligent in making these statements because the Company did not have actual partnership agreements with any companies, much less 15 of them. Rather, all the Company had were non-binding memoranda of understanding with other companies and even some of these had expired by 2021.

## V.
## CLAIM FOR RELIEF

### COUNT I
### Violations of Section 17(a)(2) of the Securities Act
### (Against All Defendants)

41. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. Since as early as December 2019 through at least December 2024, Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## VI.
## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court find Defendants committed the violations alleged in this Complaint, and:

### A.
### Permanent Injunction
### (Against Defendants)

Issue Permanent Injunctions enjoining Defendants GenesisAI and Cheishvili, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them and each of them, from violating Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

### B.
### Disgorgement and Prejudgment Interest
### (Against Cheishvili)

Issue an Order directing Defendant Cheishvili to disgorge all ill-gotten gains received, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint, pursuant to Sections 21(d)(5) and (7) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)(5) and (7)].

### C.
### Civil Monetary Penalty
### (Against Cheishvili)

Issue an Order directing Cheishvili to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

### D.
### Officer and Director Bar
### (Against Cheishvili)

Issue an Order prohibiting Cheishvili from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is

required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)], for a period of three (3) years;

**E.**
**Further Relief**

Grant such other and further relief as may be necessary and appropriate.

**VII.**
**DEMAND FOR JURY TRIAL**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

Dated: August 26, 2026

Respectfully submitted,

By: /s/ *Russell Koonin*
Russell Koonin
Acting Supervisory Trial Counsel
Fla. Bar No. 0474479
Direct Dial: (305) 982-6390
Email: kooninr@sec.gov

Eric E. Morales
Senior Counsel
Bar No. 1010791
Direct Dial: (305) 416-6261
Email: moralese@sec.gov

Attorneys for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300